## In re RICHARD.

Court of Appeals of Kentucky.

Dec. 14, 1951.

A. Scott Hamilton, Louisville, for appellant.

John A. Fulton, Louisville, S. J. Stallings, Louisville, A. E. Funk, Atty. Gen., of counsel, for appellee.

PER CURIAM.

The Board of Bar Commissioners recommends the permanent disbarment of respondent, Carl J. Richard, of Louisville.

A complaint was filed before the State Board of Bar Commissioners by the Louisville Bar Association charging respondent "with unprofessional conduct and professional misconduct." One of the charges concerns a letter written by respondent as attorney for the plaintiff in a personal injury action, to the attorney for the defendant in the action. The other charges, eight in number, concern alleged solicitation of personal injury cases, in person and through a "runner," it being alleged that the solicitation was engaged in "as a definite plan, system, and established practice." A trial committee, after taking evidence, found the respondent guilty on the charge concerning the letter, and found him guilty on five charges of solicitation through a "runner," and on one charge of personal solicitation. He was found not guilty on the other two charges of solicitation, but his conduct in one of the latter two cases was found to be censurable. Upon receiving the report of the trial committee, the Board of Bar Commissioners resolved that the respondent "be adjudged guilty of the offense complained of."

The charge concerning the letter is that the respondent, representing the plaintiff in a personal injury action, wrote a letter to the attorney representing the defendant in the action, suggesting a settlement, which letter contained the following sentence: "If we can not get together on a reasonable settlement figure, for your information an indictment will be sought against * * * (your client) * * * for violation of the statute dealing with carrying concealed a deadly weapon."

Respondent admits writing this letter but claims it was written at the request of the attorney for the defendant. The personal injury action arose out of a shooting affray. Respondent testified that his client was demanding that a warrant be issued against the defendant for carrying a concealed weapon, that this demand had been discussed in a conversation with the defendant's attorney concerning settlement of the case, and that the latter had suggested that the letter be written for use in discussing settlement with his client. The attorney for the defendant testified before the trial committee and denied requesting that any such letter be written. He stated that his client already was under indictment for malicious shooting and wounding, a much more serious charge than the one of carrying a concealed weapon.

The charge was that in writing the letter, the respondent "engaged in a reprehensible course of conduct which tends to bring the legal profession in disrepute, thwart the administration of justice, and lower the standards of lawyers generally throughout the state of Kentucky." The trial committee found respondent guilty on this charge. We are of the opinion that

the conduct of respondent in writing this letter justified the severity of the language used in the charge, and that the evidence was sufficient to support the finding of guilt on the charge.

The charges of solicitation of which respondent was found guilty all involve activities that took place in 1949. During part of 1949, one J. J. O'Conner was respondent's father-in-law, and the charges involving solicitation through a "runner" all are concerned with the activities of O'Conner. Respondent married one of O'Conner's daughters in 1946. She had been his secretary for several years prior to the marriage and continued to serve as his secretary during the period of the marriage. He was divorced from her in July 1949, but she continued to serve as his secretary until November 1949.

O'Conner was a man about 73 years of age. For many years he was engaged in the insurance business in Louisville, but in recent years he was in poor health, both physically and mentally, and apparently was somewhat addicted to drink. During 1948 and 1949 he from time to time sold coal on commission, and also "insul-brick" by house to house solicitation.

In the five cases with respect to which respondent was found guilty of solicitation, the proof shows that O'Conner visited the homes of persons involved in accidents, a day or two after the accidents occurred. In each case he discussed the accident and suggested the need for an attorney. He carried with him typewritten carbon copies of contracts for the employment of an attorney, on a 50 per centum fee. Some of the contract forms carried respondent's name as attorney, while others had a blank space for the attorney's name. After securing signatures to the contract forms, O'Conner took or sent the contracts to respondent, who then contacted the parties by telephone or by letter. O'Conner testified that in some of the cases he heard about the accidents and called on the people because he thought he knew them, while in other cases he learned about the accidents when calling on people for the purpose of selling them "insul-brick."

Respondent testified that he did not give O'Conner any blank contract forms, and that respondent's wife must have taken some of the contract forms to her parent's home, where they were available to O'Conner. Respondent further testified that he did not employ O'Conner to solicit for him, that he did not pay O'Conner anything, and that he thought O'Conner, through his wide experience in Louisville, knew the people whose contracts O'Conner brought in.

There is no escape from the conclusion that respondent knew O'Conner was using contract forms that came from respondent's office, because O'Conner was bringing or sending signed contracts to respondent's office. We can find no justification for respondent's alleged belief that his father-in-law happened to have a wide acquaintance among people who were suffering personal injuries.

The evidence fully establishes that O'Conner was soliciting cases for respondent and that respondent knew of the solicitation. The fact that respondent thought that O'Conner was soliciting only among his acquaintances and not among strangers, is no excuse for respondent's conduct. Nor is it any excuse that O'Conner was not being paid anything for his solicitation work. The least that can be said is that respondent was guilty of knowingly accepting the benefits of solicitation made in his behalf.

Respondent was found to have committed one act of personal solicitation. There was evidence that respondent called at the home of a boy who had been struck by an automobile, and solicited employment as an attorney to file a personal injury action on behalf of the boy. He was not successful in securing the solicited employment. Respondent flatly denied this charge of solicitation and testified that he had never visited or seen the people in question. However, both the child and mother identified respondent, at the hearing before the trial committee, as the man who had visited their home and solicited employment. The evidence supports the finding on this charge.

On a charge that respondent solicited employment through a taxi driver, the trial committee found him not guilty of solicitation but did find that he should be censored for his conduct in handling the case. Respondent settled the personal injury case for $100 of which he paid $37.50 to his client. He claimed that out of the balance he was required to pay $37 for the services of two doctors who examined the boy, but his evidence in support of this claim was very unsatisfactory.

In summarizing, we find that respondent was guilty of reprehensible conduct with regard to the letter; that in five instances in one year he was guilty of accepting the benefits of solicitation of personal injury cases made on his behalf, his conduct in this regard being such as to establish that he was willingly participating in a continuing course of solicitation, and not merely accepting the benefits of casual or intermittent solicitation; that in one case he personally solicited employment; and that in one case he took advantage of a client with respect to a fee. The question now is, what discipline should be imposed upon respondent by reason of this conduct.

We have reviewed the cases from this Court where similar violations were proven against attorneys of this Bar and find that the punishment recommended by the Board of Bar Commissioners has varied from three months' to three years' suspension from the practice of law. In view of the former recommendations of the Board in this type of case, a majority of the Court are of the opinion that permanent disbarment of the respondent would be too harsh.

So far as we are advised the previous record of respondent is clear. Numerous statements of prominent lawyers and officials appear in the record attesting to his good previous reputation. His war record has been called to our attention by his counsel in seeking leniency. These extenuating circumstances have been considered and properly valued in keeping with the commendable effort of the Board to remove from our Bar attorneys that have been found guilty of unwarranted practices.

The majority of the Court have decided to reprimand respondent and to suspend him from the practice of law in this Commonwealth for a period of two years. Two members of the Court are of the opinion that the recommendation of the Board of Bar Commissioners should be approved.

It is ordered by the Court that the respondent, Carl J. Richard, be, and he is hereby reprimanded and suspended from the practice of law in this Commonwealth for a period of two years, beginning from the date this opinion becomes final.